UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| EARNEST H. SANDERS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:24-CV-003-GSL ) |
| MARTIN J. O'MALLEY, Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) ) |

## OPINION AND ORDER

This matter comes before the Court on Plaintiff Earnest H. Sanders' ("Sanders") appeal of the Social Security Administration's Decision dated September 8, 2023 (the "Decision") which found that Sanders was not disabled prior to November 1, 2021 and not entitled to disability benefits prior to November 1, 2021. The parties have briefed the appeal. After considering the briefing and the administrative record, the Court finds, for the following reasons, that the Decision must be affirmed.

### ANALYSIS

**A. Standard of Review**

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. This Court must affirm the ALJ's decision if it is supported by substantial evidence and free from legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla of proof." *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001). It means "evidence a reasonable person would accept as adequate to support the decision." *Murphy v. Astrue*, 496 F.3d 630, 633 (7th Cir. 2007); *see also Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (substantial evidence is "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation and quotations omitted). In determining whether there is substantial evidence, the Court reviews the entire record. *Kepple*, 268 F.3d at 516. However, review is deferential. *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). A reviewing court will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (quoting *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)). Nonetheless, if, after a "critical review of the evidence," the ALJ's decision "lacks evidentiary support or an adequate discussion of the issues," this Court will not affirm it. *Lopez*, 336 F.3d at 539 (citations omitted).

While the ALJ need not discuss every piece of evidence in the record, he "must build an accurate and logical bridge from the evidence to [the] conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Further, the ALJ "may not select and discuss only that evidence that favors his ultimate conclusion," *Diaz*, 55 F.3d at 308, but "must confront the evidence that does not support his conclusion and explain why it was rejected," *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). Ultimately, the ALJ must "sufficiently articulate his assessment of the evidence to assure" the court that he "considered the important evidence" and to enable the court "to trace the path of the ALJ's reasoning." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985) (internal quotation marks omitted)).

**B. Procedural Background**

Sanders filed applications for benefits in July and August of 2019 alleging that he had been disabled since January 1, 2014. The claim was denied initially and on reconsideration. On December 10, 2020 a hearing was held before an ALJ. On December 24, 2020, the ALJ issued an unfavorable decision. In due course, Sanders filed a complaint in this Court, seeking to reverse the

ALJ's decision. On August 30, 2022, this Court reversed and remanded the case for further administrative proceedings.[1]

In the meantime, Sanders filed a new application for benefits on June 2, 2021, alleging disability beginning on December 25, 2020. The claim was denied initially and on reconsideration. The Appeals Council, in an order dated December 30, 2022, consolidated this subsequent application with the remanded claims and sent them to the ALJ to issue a new Decision. On July 13, 2023, the parties participated in a telephone hearing before the ALJ. The ALJ issued a partially unfavorable decision on September 8, 2023, finding that Sanders had been disabled since November 1, 2021, but was not disabled prior to that date. (R. 834-862). This appeal followed.

### C. The ALJ's Decision

A person suffering from a disability that renders him unable to work may apply to the Social Security Administration for disability benefits. *See* 42 U.S.C. § 423(d)(1)(A) (defining disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"). To be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but also any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. § 423(d)(2)(A). If a claimant's application is denied initially and on reconsideration, he may request a hearing before an ALJ. *See* 42 U.S.C. § 405(b)(1).

An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits: (1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3)

---

[1] 1:21cv221-SLC

whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether he has the residual functional capacity to perform his past relevant work, and (5) whether the claimant is capable of performing any work in the national economy. *See* 20 C.F.R. § 404.1520(a*); Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). If step four is answered in the affirmative, the inquiry stops and the claimant is found to be not disabled. If step four is answered in the negative, the ALJ proceeds to step five.

Here, at step one, the ALJ found that Sanders did not engage in substantial gainful activity since January 1, 2014, the alleged onset date. At step two, the ALJ determined that, since the alleged onset date of disability, January 1, 2014, Sanders had the following severe impairments: chronic obstructive respiratory disease (COPD); obesity; major depressive disorder; and generalized anxiety disorder. Beginning on the established onset date of disability, November 1, 2021, Sanders had the following severe impairments: right knee osteoarthritis; COPD; obesity; major depressive disorder; and generalized anxiety disorder. (R. 837). The ALJ further found that Sanders had the non-severe impairments of degenerative disc disease, hypertension, learning disability, difficulty getting along with people, unspecified hip pain, impulse control disorder, and GERD. (R. 838).

At step three, the ALJ found that Sanders did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 839). At step four, the ALJ found that, prior to November 21, 2021, Sanders had the residual functional capacity ("RFC") to:

> perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except that the claimant is limited to lifting, carrying, pushing, and pulling 24 pounds frequently and 50 pounds occasionally. The claimant can sit at least six hours in an eight-hour

>workday and stand and/or walk 6 hours in an eight-hour workday. The claimant should not climb ropes, ladders, or scaffolds. The claimant can frequently kneel, crouch, and crawl. The claimant can frequently bend and stoop in addition to what is required to sit. The claimant can frequently use ramps and stairs. He could maintain the balance required of such activities. The claimant is limited from concentrated exposure to excessive airborne particulate, dusts, fumes and gases and excessive heat, humidity and cold such as when working outside or within a sawmill, boiler room, chemical plant, green house, refrigerator unit, or sewage plant. The claimant is limited from complex tasks but can understand and comprehend, apply the instructions, focus, concentrate, pacing, and persistence associated with detailed tasks. He is able to tolerate frequent interactions with coworkers, supervisors, and the public. Long and intense conversation is not required for task completion.

(R. 841-42).

The ALJ further found that, since November 1, 2021, Sanders had the RFC to:

>perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant should not climb ropes, ladders, or scaffolds. The claimant can frequently kneel, crouch, and crawl. The claimant can frequently bend and stoop in addition to what is required to sit. The claimant can frequently use ramps and stairs. He could maintain the balance required of such activities. The claimant is limited from concentrated exposure to excessive airborne particulate, dusts, fumes and gases and excessive heat, humidity and cold such as when working outside or within a sawmill, boiler room, chemical plant, green house, refrigerator unit or sewage plant. The claimant is limited from complex tasks but can understand and comprehend, apply the instructions, focus, concentrate, pacing, and persistence associated with detailed tasks. He is able to tolerate frequent interactions with coworkers, supervisors, and the public. Long and intense conversation is not required for task completion.

(R. 856-57).

Also at step four, the ALJ found that Sanders is unable to perform past relevant work. (R. 859). At step five, the ALJ found that, prior to November 1, 2021, Sanders was capable of performing jobs that exist in significant numbers in the national economy. (R. 860). However, the ALJ further found that, beginning on November 1, 2021, there were no jobs that exist in significant

numbers in the national economy that Sanders could perform. Thus, the ALJ ruled that Sanders was not disabled, as defined in the Social Security Act, prior to November 1, 2021, but became disabled on that date and has continued to be disabled through the date of the Decision. (R. 862).

### 1. The ALJ's Analysis of Sanders' Nebulizer Treatments

In support of remand, Sanders' sole argument is that the ALJ failed to consider the effects of his nebulizer treatment. He claims that this treatment was consistently prescribed by doctors throughout the record and that he needs to use his nebulizer several times throughout the day. Sanders further claims that his frequent need to use a nebulizer interferes with his ability to maintain employment.

The record shows that Sanders' first pulmonary function test, in May of 2018, showed that he had a moderate obstruction. (R. 847, 1796, 1799). In 2019, Sanders' pulmonary exam was normal and he denied shortness of breath, cough, or wheezing. (R. 847). Sanders had normal effort, normal breath sounds, no wheezes, no rales, and no respiratory distress in March, April, May and August of 2019. (R. 847, 522, 507, 492, 487). Notably, treatment records from March, 2019 showed that Sanders' breathing was "well-controlled" even though he had "been off inhalers and nebulizer." (R. 847, 519, 521, 522). January 2020 treatment records indicate that Sanders was using an inhalation solution one to two times a month. (R. 848, 763). The pulmonary examination results from January 2020 showed normal effort, normal breathing sounds, no wheezes, no rales, and no respiratory distress. (R. 848, 767). In March 2020 Sanders had an upper respiratory infection with fever, cough, shortness of breath, and wheezing. (R. 848, 779, 1749). In July 2020, Sanders complained of a persistent cough, as well as dyspnea with exertion, but his pulmonary exam findings were normal with no effort, normal breath sounds, no wheezes, no rales, and no

respiratory distress. (R. 851, 773-74, 1685). Moreover, Sanders' mild to moderate emphysema was well controlled at this time. (R. 774). In November 2021, Sanders' pulmonary exam findings were again normal. (R. 2482).

Sanders testified that he uses a nebulizer four times a day for up to 30 minutes at a time and that the treatment makes him sleepy for 30 minutes afterwards. (R. 891-92). The ALJ noted this testimony but found that Sanders' statements were not fully supported by the record. (R. 844). The Commissioner argues that Sanders has not presented any evidence showing that he used a nebulizer as claimed, and that there is no credible evidence supporting the claim. The Commissioner notes that the only evidence Sanders cites to support his argument is medication lists showing that he was prescribed nebulizer solution for use every four to six hours as needed for wheezing or shortness of breath. (R. 502, 1482, 1527, 1531, 1536, 1740), The Commissioner argues that the medication list alone is insufficient to establish that Sanders actually used a nebulizer as he claimed with the alleged side effects. The Commissioner notes that there is no evidence in the treatment records showing that Sanders used a nebulizer at the maximum or near maximum level allowed by his prescription. Rather, the treatment records indicate that Sanders was able to manage his respiratory symptoms with minimal inhaler and nebulizer use, and his symptoms were well-controlled when he was using the nebulizer no more than twice a month. (R. 848, 763). Additionally, no medical provider noted that Sanders was using a nebulizer as frequently as he now claims.

Sanders also suggests that the ALJ may have overlooked his nebulizer use when assessing the RFC. However, as the Commissioner notes, there is no indication that the ALJ overlooked the claimed use of the nebulizer. Rather, the ALJ considered Sanders' testimony that he used a nebulizer four times a day and rejected this testimony. (R 843-44). In fact, the ALJ explained in

detail why he was not persuaded that Sanders' COPD was as severe as alleged noting that Sanders was not under the care of a pulmonologist. (R. 844). Moreover, the ALJ noted, even during the few periods of exacerbation, Sanders' symptoms did not warrant hospitalization, and a chest x-ray taken during a period of exacerbation showed nothing acute. (R. 844).

As Sanders' claim regarding nebulizer use is a subjective allegation, the ALJ's conclusion that there was insufficient support for the allegation must be upheld unless "patently wrong", which is a high threshold. *Weber v. Kijakazi*, 2021 WL 3671235, *5 (7th Cir. Aug. 19, 2021). Here, it is clear that the ALJ provided sufficient explanation and substantial support for his decision. *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024) (ALJs are subject only to the most minimal of articulation requirements). Sanders alleges that the ALJ erred at step five in the sequential analysis, by not including limitations related to the alleged nebulizer use in the hypotheticals to the vocational expert. However, as the ALJ did not err in the RFC analysis, there was no error in the step five hypothetical to the vocational expert.

Thus, as there are no errors in the Decision, it must be affirmed.

## CONCLUSION

For the reasons set forth above, the Defendant's Decision is AFFIRMED. The Clerk is directed to enter judgment in favor of Defendant and against Plaintiff.

SO ORDERED on August 12, 2024.

/s/ Gretchen S, Lund
JUDGE
UNITED STATES DISTRICT COURT